OPINION
On May 6, 1998, Daniel Lambeth was at home in Reynoldsburg, Ohio, when he heard his doorbell ring. Mr. Lambeth was delayed in answering the door and, during that time, the doorbell rang repeatedly. When he finally got to the door, no one was there. Mr. Lambeth then glimpsed someone in dark clothing walking around the corner of his house toward the backyard.
Mr. Lambeth went to the back of his house and stepped outside, only to hear glass breaking. He found a man lying on the deck in front of a newly broken basement window. Mr. Lambeth had an opportunity to view the intruder for five to six seconds from a distance of approximately twelve feet.
When the intruder became aware that Mr. Lambeth had found him, the intruder fled. Mr. Lambeth then called the Reynoldsburg police, related what had occurred and gave a fairly detailed description of the man.
Police Officer Guy Patete responded to the telephone call soon thereafter. Before Mr. Lambeth had finished giving information, a call came over the police radio indicating that a suspect who seemed to fit the description earlier given by Mr. Lambeth had been apprehended not far away. The person detained was Darnell C. Scott.
Mr. Scott was transported via police cruiser to, or back to, Mr. Lambeth's residence. Mr. Lambeth then identified Mr. Scott as the person who had started to break into Mr. Lambeth's house earlier.
Mr. Scott was later indicted on a single charge of attempted burglary. The case ultimately proceeded to trial before a jury. The jury found Mr. Scott guilty as charged.
Mr. Scott has now pursued a direct appeal, assigning a single error for our consideration:
 The trial court commits reversal error by permitting the state to solicit testimony from a police officer as to the ultimate issue, in violation of the defendant's right to a fair trial under the federal and state constitutions.
At trial, the sole issue was whether Daniel Lambeth was correct in his identification of Mr. Scott as the person who tried to break into Mr. Lambeth's house. In an attempt to cast doubt on the identification, defense counsel raised questions about perceived inconsistencies between a police report and the testimony given at trial. Defense counsel raised these questions as part of cross-examination of Guy Patete, the police officer who first responded after the call to the Reynoldsburg police following the attempted burglary.
In response, on redirect examination, the police officer indicated that he recorded less information on his reports when he had a known suspect who had already been identified by the crime victim than when then suspect was unknown. The assistant prosecuting attorney trying the case then asked:
Q. In your mind, is this crime solved at that time?
* * *
 Q. In your mind[,] had the perpetrator or the person that committed this offense been found at the time you were filling out the offense report?
A. He had been positively ID'd, correct. (Tr. 171-172.)
Immediately after these questions, the trial court sua sponte told the jury:
 Ladies and gentlemen of the jury, I will allow that last answer as it had to do with the filling out of this form, whether there was a need to complete the form or not complete the form.
 You're not to interpret that last answer as some opinion on the part of this witness that this is the man who committed that crime.
Does everybody understand that? Okay. (Tr. 172.)
The questions asked by the assistant prosecuting attorney probably should not have been asked, but they did not constitute prejudicial error. The typical jury is quite aware that police officers believe they have the guilty party when, within minutes of a crime being committed, they apprehend someone who fits the description given by the victim of the crime and then the victim immediately identifies the suspect.
Whatever minimal prejudice can be suggested was surely cured when the trial judge explained the sole permissible purpose for the question and explained the limited use which the jurors could make of the answer to the question.
Since we find no prejudicial error, we overrule the sole assignment of error. As a result, we affirm the judgment and sentence of the trial court.
Judgment affirmed.
BRYANT and PETREE, JJ., concur.